Johnson *v.* State Workmen's Insurance, Appellant.

Argued April 23, 1930.

Before
TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNING-
HAM and BALDRIGE, JJ.

*Roscoe R. Koch,* Deputy Attorney General, and with
him *Ralph H. Behney* and *Cyrus E. Woods,* Attorney
General, for appellant.—The findings of the compensa-
tion authorities, supported by competent proof, and the
inferences to be drawn therefrom, are as conclusive on
the courts as the verdict of a jury; Krischunas v. P. &
R. C. & I. Co., 296 Pa. 216; Johnston v. Payne-Yost C.
Co., 292 Pa. 509; Todd v. State Workmen's Insurance
Fund, 295 Pa. 14; Piper v. Adams Express Co., 270
Pa. 54; Ford v. A. E. Dick Co., 288 Pa. 140.

*Peter P. Jurchak,* for appellee, cited:   Vorbnoff v.
Mesta Machine Co., 286 Pa. 199; Callihan v. Mont-
gomery, 272 Pa. 56; Anderson v. Baxter, 285 Pa. 443.

OPINION BY CUNNINGHAM, J., July 10, 1930:
The present controversy in this workmen's compen-
sation case is over the question whether the claimant is
entitled to an award for partial disability in addition
to those already made; the referee held that he is and
made an award; the board reversed the referee; the

court below reversed the board and entered a judgment reinstating the award. The present appeal is by the employer and its insurance carrier from that judgment.

As the award for partial disability is the last of a series, a brief review of the history of the case is necessary. On February 3, 1927, Ellis Johnson, claimant and appellee herein, was injured while ''shooting'' coal in the course of his employment with the Quemahoning Coal Company. According to the accident report and the agreement hereinafter mentioned the claimant ''was firing a shot and thought the squib went out and walked back to investigate and shot went off in his face.'' His injuries are thus described: ''Eyes injured slightly and burned about body and hands.'' Under date of August 16, 1927, a compensation agreement was entered into, under which compensation for total disability was paid, beginning February 13, 1927, and ending May 9, 1927, (the date upon which claimant returned to work) in the sum of $146. Subsequently, claimant filed a petition for review of the agreement upon the ground that it did not provide compensation for the disfigurement which he had suffered. The defendants' answer denied that claimant was entitled to compensation upon that ground. At the hearing before the referee upon this petition it was amended to include therein a claim for the loss of the use of petitioner's right eye; Drs. Dull and Harris testified with respect to disfigurement by powder marks and Dr. Harris also with relation to the extent of claimant's vision. The uncontroverted testimony of the latter was to the effect that correcting glasses bring the vision in the right eye up to 20/50 (the equivalent under the Snellen Notations for distance of 76.5 per cent. of visual efficiency) and the left eye up to 20/20, the equivalent of 100 per cent. The referee made findings to the effect that claimant had suffered a permanent facial disfigurement but had not lost the use of his right eye for industrial purposes; an

award for disfigurement at $12 per week for a period of sixty weeks, to begin as of the date of last payment for total disability, was accordingly made under date of February 24, 1928, and the claim for loss of the use of the right eye disallowed. No appeal was taken from these findings and they are therefore res judicata. Dr. Harris in his testimony, when asked whether claimant had "some partial disability due to poor vision" replied, "He is no doubt incommoded to some extent. I say incommoded, it is not an actual loss."

The disallowance of the claim for the loss of the industrial use of the eye did not, however, preclude a claim for compensation for partial disability under paragraph (b) of section 306 of the Act of 1915, as amended by the Act of June 26, 1919, (the accident having occurred prior to December 31, 1927), P. L. 642, 644: Massett v. Armerford Coal Co., 82 Pa. Superior Ct. 579, 583.

On February 27, 1928, claimant filed a petition for a modification of the agreement averring that he had a loss in earning power following the termination of his total disability. A hearing upon this petition was had on March 13, 1928, before a different referee, who, on the following day, made a finding that claimant had suffered no loss of earning power since his return to work and was doing the same kind of work that he had done prior to his injury. No appeal was taken from this finding and it therefore conclusively establishes that claimant has had no loss of earning power up to March 14, 1928.

On June 28, 1928, claimant presented a petition for reinstatement of the agreement upon the ground that he was then entitled to compensation for partial disability. This petition was referred to the referee who conducted the first hearing. At the hearing upon this last petition, claimant, two of his fellow employes and the paymaster of the employer were called upon the issue of partial disability. After interrogating counsel

for claimant, the referee stated he understood that the partial disability, then claimed, was predicated upon the alleged loss of hearing in claimant's left ear and the impairment of vision in his right eye. On October 8, 1928, the referee made findings, based upon the medical testimony at the first hearing and the testimony of the witnesses called at the second hearing, one of which was to the effect that claimant's average weekly wage at the time of the injury was $39.43 and that his then weekly wage was $25.08, indicating a loss in earning power, by reason of defective vision, of the difference, and ordered that the original agreement be reinstated and modified to provide for weekly compensation payments of $8.61, to begin as of the date of the last payment of compensation and to continue until such time as the disability ceased or changed in extent, not exceeding the limitations of the act. Defendants appealed to the board from this award, specifying that they excepted to all the findings of fact of the referee.

The primary difficulty in this case arises at this point. The board, under section 423 of the Act of 1919 (P. L. 664), was authorized to (a) disregard the findings of fact of the referee after examining the testimony taken before him; (b) take additional evidence if deemed proper; and (c) substitute for the findings of the referee such findings of fact as the evidence, including that which may have been taken by the board, requires. It took no additional testimony and, although it disagreed with the referee and impliedly disregarded his findings, no specific findings of fact were made in substitution of those found by the referee. An opinion was filed by the board which reviewed the history of the proceedings, commented upon the testimony, pointed out that the only basis for the claim for partial disability seemed to be an impairment of vision in the right eye, and concluded thus: "This loss of vision may constitute a partial disability, but we do not believe the evidence sustains such a find-

ing and order of award. We reverse and set aside the order of the referee granting additional compensation for partial disability, dismiss the claimant's petition for reinstatement of the agreement, and sustain the appeal.''

The issue before the board was one of fact—whether claimant had suffered, subsequent to March 14, 1928, any partial disability caused by the accident and resulting in a loss of earning power. We do not understand the decision of the board to be a finding of fact upon that question but rather a conclusion of law that there was not sufficient legally competent evidence to sustain the findings of the referee. It is unnecessary at this late date to cite authorities for the proposition that the question whether there is competent evidence to support an award is a question of law for the courts and that a decision on that question is a conclusion of law and not a finding of fact. In our opinion the board, in disposing of this appeal, did not properly exercise its revisory jurisdiction as conferred by the statute and as outlined in the case of Vorbnoff v. Mesta Machine Co., 286 Pa. 199, in which the Supreme Court said (p. 207): ''Briefly, it comes to this, the compensation authorities are to decide all questions of fact and the courts are to decide those of law.''

''When the board sustains an appeal from the referee and substitutes its own findings of fact for those of the referee, it should do so 'formally, instead of impliedly.' It should make a distinct finding of fact, and if it fails to do so the record will be remitted'': Skinner's Pennsylvania Workmen's Compensation Law, 2nd Ed., p. 477, citing Vorbnoff v. Mesta Machine Co., supra.

Upon appeal to the common pleas, the court instead of remitting the record to the board under section 427 of the Act of 1919 (P. L. 665) for specific findings of fact, reviewed the testimony and, after balancing the evidence of claimant's fellow workmen, based, as

stated by the court, "upon actual observation and demonstration," as against that of the eye specialist, based "on theory," concluded that "the evidence [was] sufficient in law to sustain the findings of fact and order entered by the referee," and accordingly reversed the action of the board and entered judgment upon the award of the referee. As neither the board nor the court below seems to have exercised their respective functions in accordance with the act as construed by our appellate courts, we have concluded that the assignments should be sustained and the record remitted to the board for specific findings upon the question of fact above stated.

The judgment of the court below is reversed and that tribunal is directed to return the record to the compensation board for further proceedings consistent with this opinion.